IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LYNNE LOUISE MASSIE,
    Plaintiff,

v.                                                  Case No: 3:09cv426/WS/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.
_____

## REPORT AND RECOMMENDATION

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Massie's application for a period of disability and disability insurance benefits under Title II of the Act.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Ms. Massie filed an application for benefits claiming an onset of disability as of October 16, 2004. After an unfavorable decision by an Administrative Law Judge (ALJ) the Appeals Council remanded for further consideration of the opinions of treating physicians and any effect of Ms. Massie's obesity on her residual functional capacity. A supplemental hearing was held on June 12, 2009 at which Ms. Massie was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 16-28) and Ms. Massie requested review by the Appeals Council and submitted additional evidence. The Appeals Council considered the new evidence but declined review (tr. 7-9). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel,* 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Massie had not engaged in substantial gainful activity since October 16, 2004; that she had severe impairments of (1) degenerative disc disease of the cervical spine, (2) cervical spinal stenosis, (3) degenerative disc disease of the lumbar spine, (4) anxiety, and (5) depression, but that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; that she had the residual functional capacity to perform light work with restrictions of only occasional reaching overhead, climbing stairs, ramps, ladders, and scaffolds, occasional balancing, stooping, kneeling, crouching, and crawling and further restriction to the performance of simple, repetitive, routine tasks; that she was capable of performing her past relevant work as a data entry clerk; that she was not under a disability as defined in the Act since her onset date.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. See 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe physical or mental impairment that meets the duration requirement?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

4. Considering the individual's residual functional capacity, can the individual perform past relevant work?

5. Can the individual perform other work given the individual's residual functional capacity, age, education and work experience?

(*Id.*)

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant

work. *Moore,* 405 F.3d at 1211 (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

On February 28, 2005, an MRI of Ms. Massie's neck disclosed degenerative disc changes in the cervical spine with a disc osteophyte complex at C5-6 with mild canal stenosis. An MRI of her lumbar spine showed mild degenerative changes with no evidence of disc herniation or stenosis (tr. 152-154).

Ms. Massie has been treated routinely at the Tiger Point Family Practice by Drs. Vera, Swayze, Westafer, and Jacenyak. Their treatment covered the period from November 2005 through September 2008. At her visits to the clinic, Ms. Massie complained of chronic pain, anxiety and depression. Her physical examinations were essentially normal. That is, she complained of back pain but her neurological examinations were normal, her strength was good and her gait was normal. Straight leg raising was positive on occasion but negative at other times. At worst, there was some spasm in her neck and mid-spine (tr. 204-209, 256-257, 291-292, 371).

On July 31, 2006, Dr. Vera filled out an assessment form in which she opined that Ms. Massie could walk, stand or sit less than one hour, would have to rest every 20-30 minutes for 10-15 minutes at a time, and was disabled from full-time employment (tr. 274-275).

On March 9, 2009, Dr. Jacenyak filled out a form in which she opined that Ms. Massie could lift and carry less than ten pounds, sit and stand for less than two

hours, would have to lie down every hour during an eight-hour workday and could stand and walk no more than fifteen minutes at a time (tr. 364-365).

Ms. Massie was examined by several physicians at the request of the State Agency. The first, Patrick Evans, M.D., saw her on January 18, 2005. On examination there was mild restricted motion in the cervical spine but no spasm, mild tenderness in the thoracic spine with full range of motion, and some restricted motion in the lumbar spine but negative straight leg raising, normal neurological exam, and no other abnormality noted. Dr. Evans' impression was soft tissue injury with pre-existing mild degenerative changes in the neck, aggravated by a motor vehicle accident. He felt that Ms. Massie could work with a ten pound push/pull/lift limit and do mainly office work (tr. 147-149).

Roger Ostrander, M.D., saw her on June 6, 2005. His record noted that Ms. Massie had been seen by another physician and was told that she was cleared for work. She sought a second opinion. She gave a history of a motor vehicle accident in October 2004 with treatment by a chiropractor but continued significant pain in her neck, along her back and in her lower lumbar area. On physical examination there was full range of motion in her neck but with pain, there was tenderness throughout her back but with good range of motion in the lumbar spine, and strength in all extremities was normal. She complained of subjective tingling in her fingers but sensation was grossly intact. X-rays were unremarkable. An MRI showed no evidence of disc herniation or stenosis in the low back but did show some central canal stenosis in the neck. Dr. Ostrander's impression was a patient with significant cervical spine and lumbar pain with degenerative disc disease and some central canal narrowing. However, he felt that these findings did not explain the majority of her symptoms which may have been myofascial strains from the car accident. Finally, Dr. Ostrander stated that Ms. Massie could benefit from seeing a psychiatrist and a physical medical physician to deal with her pain syndrome (tr. 155-156).

On June 19, 2006, Ms. Massie was seen by Richard Lucey, M.D., a family practice specialist. Ms. Massie gave a history consistent with that given to Dr. Evans. On physical examination, Ms. Massie's range of motion in her mid and low back was somewhat diminished with subjective complaints of low back discomfort. Her examination was otherwise normal, with no spasm or tenderness, normal reflexes, negative straight leg raising, good range of motion in all major joints, no swelling, full grip strength, normal fine manipulatory movements and no weakness, atrophy or sensory deformities (tr. 162-164).

On June 12, 2007, Ms. Massie was examined by Michael Kasabian, D.O., a family practitioner, and her history was consistent with that given earlier. She did complain of reflux disease for which she took Prilosec, with good control. She also gave a history of depression with occasional suicidal thoughts but no ideation presently. On physical examination she was a little tender with spasm in her neck. Her extremities were normal. Her neurological examination was normal. Ms. Massie had a cane with her but walked without it and ambulated well without a limp. She indicated that she sometimes used it to help her keep steady. Her grip strength, dexterity and reflexes were normal. There was no muscle atrophy or asymmetry. Straight leg raising was negative. There was some tenderness in the low back with some muscle spasm. She did not appear to be depressed (tr. 236-237).

On May 7, 2008, Ms. Massey was examined by C.W. Koulisis, M.D., an orthopedic surgeon. Ms. Massie gave a history of four different motor vehicle accidents "over the years" resulting in neck and back pain. She complained of pain and numbness down both arms, both legs, including the entire arm and leg. On physical examination, she arose without difficulty with a normal gait. She was able to heel, toe and tandem walk without difficulty. There was no palpable spasm in her neck and her motor strength was normal. Reflexes were also normal and sensation was intact. Shoulder and elbow motion were normal. Her wrists and hands were stable to all stresses. In her mid and low back there was no palpable spasm, motor

strength, reflexes and sensation were normal. Range of motion in her leg joints was normal. Dr. Koulisis filled out a form entitled Medical Source Statement of Ability to do Work-Related Activities (physical) in which he opined that there was no limitation on lifting and carrying and that Ms. Massie could sit, stand and walk for up to eight hours in an eight hour workday, did not need a cane, had no restrictions on the use of her hands and could operate foot controls (tr. 276-287).

At the hearing Ms. Massie testified that her medications caused serious side effects, including lightheadedness, sleepiness and forgetfulness that "put[] [her] at a standstill." (Tr. 408-09).

## DISCUSSION

Ms. Massie argues that the ALJ erred in failing to consider the side effects of her medication and in not giving appropriate weight to the opinion of treating and consulting physicians, and that she was disabled from her onset date. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Ms. Massie was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. <u>Medication.</u>

As noted above, Ms. Massie testified that her medications had significant side effects, and that the ALJ failed to make any findings of fact in the impact of these conditions. Ms. Massie's argument is misplaced because the ALJ did consider her alleged medication side effects. In his first opinion the ALJ noted that Ms. Massie complained of forgetfulness, being lightheaded and losing her balance because of her medications (tr. 307). In his second opinion (the one now under review) he specifically incorporated and adopted this summary of the hearing testimony from the first hearing (which was not materially different from the testimony in the second

hearing (tr. 18-19)). He then found that Ms. Massie was limited to the performance of simple, repetitive, routine tasks and could do work requiring no more than occasional balancing (tr. 20-21). It would have been helpful if the ALJ had stated that he was imposing these limitations *because* of the medication side effects, but his failure to do so was not fatal. The ALJ's findings with respect to the symptoms of the medication side-effects, as discussed in the first opinion and incorporated into the second, were covered by these limitations. Therefore, the side effects were addressed and dealt with and Ms. Massie is not entitled to reversal on this ground.

    2.    <u>Physician opinions.</u>

Ms. Massie also contends that the ALJ erred because he did not accept the opinions of Drs. Vera and Jacenyik. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the

ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Here the ALJ stated that Dr. Vera's opinion was "nonsensical" because the restrictions she found would make Ms. Massie essentially bedridden. Ms. Massie argues that this shows bias. The word nonsensical may not have been the best choice, but it is not entirely inaccurate. It is true that there were positive findings on the MRI, but as the ALJ noted, the records of Tiger Point Family Practice where Dr. Vera practiced showed almost completely normal physical examinations. The physicians recorded Ms. Massie's complaints and found some spasm, but in almost all examinations there was full strength, negative straight leg raising, good reflexes and normal neurological response. In light of these clinic records, the ALJ was well withing his realm of judging when he found that Dr. Vera's and Dr. Jacenyik's opinions were not supported by their own records. Moreover, the many examining physicians found that Ms. Massie's physical examinations were essentially normal, which further supports the ALJ's determination. The ALJ did not err, and Ms. Massie is not entitled to reversal on this ground.

---

[1] *MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 30th day of August, 2010.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636;** *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).